Patricia Ray (Pa Bar No 31989)
RAYCHAN I.P. LAW FIRM, PLLC
5 Old Mill Road Freeport PA 16229
Telephone: (215) 908-6810
Em
        ail: raypatricia@yahoo.com

Attorney for Plaintiff
Ningbo Bonny e-Home Company Ltd.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NINGBO BONNY E-HOME CO., LTD. | Case No.  2:24-cv-00568 |
| | APPLICATION FOR TEMPORARY RELIEF, FOR AN ORDER TO RESTRAIN ASSETS AND PRELIMINARY INJUNCTION UNDER FRCP RULE 65(b) |
| Plaintiff, | |
| v. | |
| ONDWAY et al. | |
| Defendants. | |

<u>(Refiled)MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR: 1) TEMPORARY RESTRAINING ORDER; 2) AN ORDER FREEZING AND RESTRAINING ASSETS; AND 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE</u>

Patricia Ray
Pa. ID No. 31989
raypatricia@yahoo.com
 Telephone 2159086810
 RayChan IP Law Firm
 Attorneys for Plaintiff

1

## TABLE OF CONTENTS

I INTRODUCTION AND BACKROUND FACTS..............................................5

III ARGUMENT……………………………………...................................,,,,,,12

A. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS
..............................................................................................12

1. Defendants are Subject to Personal Jurisdiction Under 42 P.A. Cons. Stat. §
5322 ....................................................,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,..,,,,......14

2. Exercising Personal Jurisdiction Over Defendants Comports With Due Process
......................................................,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,15.

B. PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION ................,,,,,,,,,,,,,,......................18

1. Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction Leaving
Them with No Adequate Remedy at Law .........................................................27.

2.  Plaintiff is Likely to Prevail on The Merits of Its Infringement Claims
.........................................................................,,,,,,,,,,,,,,,,,,,,,,,29.

3. The Balance of Hardships Favors Plaintiff ....................................................32

4. The Relief Sought Serves the Public Interest…………………………,,,,,,,……32

C.  PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING THE
FRAUDULENT TRANSFER OF ASSETS AND FREEZING ASSETS
……………………………………………………………………….32.

1. Defendants' Assets Must be Frozen .............................................................33

2, Defendants' User Accounts and Merchant Storefronts Must be Frozen
.................................................................................................33

 D. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT
OF $5,000 IS ADEQUATE..........................................,,,,,,,,,,,,,,,,,,,...34.

**IV. CONCLUSION**

........................................................................................, .......37

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN

DISTRICT OF PENNSYLVANIA

NINGBO BONNY E-HOME CO., LTD.

                Plaintiff,

v.

ONDWAY, et al.

                Defendants.

Case No.  2:24-cv-00568 CB

.

## REVISED MEMORANDUM

## I BACKGROUND TO THIS SUPPLEMENTATION TO THE MEMORANDUM TO MEET COURT REQUESTED REQUIREMENTS

In the ECH 20 the Court denied Plaintiff's requested relief of a Temporary Exclusion Order, stating that  Plaintiff has presented no specific evidence that any named Defendant has or will modify its/his/her online marketplace identit(ies), platform(s) or payment account(s)" and that the extraordinary remedy sought requires "specific facts" that "clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition."  This is specified in FRCP Rule 651(b) which states that a temporary restraining order may be issued only if:

(A) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) The movants attorney certifies in writing any efforts to give notice and the reasons why it should not be required.

Accordingly, this Application has been refiled with additional facts and a Second Declaration of Plaintiff's President. The Second Declaration of HongChuan Zhang supports the likelihood of immediate and irreparable injury loss and damage.

A. Defendants Take Advantage of the Seasonal Nature of the Pool Brush Business to Attack and Injure

Plaintiff has suffered injury from unauthorized, infringing sales that compete for customers particularly in the high season for sales Because the predominance of pool maintenance is in the upcoming summer months, Defendants have caused particular injury and loss with their spring and summer promotions. As detailed in the accompanying Second Declaration of President Hong, Defendants are likely to exert maximum sales efforts in the upcoming months.  As explained therein, this is a pattern that has particularly debilitated Plaintiff efforts to recoup its development expenses.  A delay of two the three months allows Defendants' time to penetrate the relevant market at a key time. Absent timely action by the Court, severe irreparable damage will be suffered by Plaintiff's legitimate pool brush sales business.

B. Defendants Sales Numbers Evidence a Growing Threat

The increase in annual sales figures is fearsome to Plaintiff, who is in the midst of recouping development expenses.  There is little else that Plaintiff can do outside of seeking the mercy of the Court.

C.  Actions of this Court have Improved the Possibility of Contact with Defendants

6

Previously, Plaintiff has tried to contact the Defendants to apprise them of their wrongdoing.  However, that has not been possible because their identities and contact information are not provided on their seller sites. Recently, since legal action has been filed, one of the Defendants. Bowanje has obtained legal counsel who has made contact with Plaintiff, aiming we believe to somehow resolve this action against them.

This initial contact might indicate that actions taken by this Court would be seriously considered and have a great chance to lessen the impact of Defendants' wrongdoing.


II.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Ningo Bonny eHome Co. Ltd refiles this Revised Memorandum in support of its Application for: 1) a temporary restraining order; 2) an order freezing Defendants' financial and other assets in their and Merchant Storefronts; and 3) an order to show cause why a preliminary injunction should not issue against Defendants,

Plaintiff has obtained evidence demonstrating that Defendants are without authorization or license using Plaintiff's patented design in promoting, selling, offering for sale and distributing products that infringe Plaintiff's design patent in violation of US Patent Law. Defendants accomplish their illegal sales through the use of online marketplaces such as Amazon.com, eBay.com and others.  Based on this evidence, Plaintiff filed a Complaint alleging design patent infringement under the Patent Act (35 USC 217 et sec.  and 35 USC 171).   Plaintiff's allegations of infringement are summarized in Exhibits 2 - 9 to the Complaint showing the respective Defendants' products and the associated online store front/marketplaces where the infringing products are offered for sale. Plaintiff has determined that

Defendants infringe the design patent using the "ordinary observer test" which has been confirmed as appropriate by the Federal Circuit and in this Federal District.

Two Declarations by Plaintiff's president Hong Chuan outline the seasonal impact of the infringement that has been experienced from Defendants through unauthorized sales on their websites. The unlawful activities have deprived and continue to deprive Plaintiff of its exclusive rights to distribute and sell products which encompass its proprietary rights and also allow it to recoup the expenses of creation and product development and getting the product to market.

Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit. Defendants are unjustly profiting at the Plaintiff's expense. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order and then an injunction prohibiting Defendants' from further harming the Plaintiff through their willful and bad faith infringement of the Plaintiff's patent.

Plaintiff also seeks to freeze financial assets and restrain the illegal profits generated by Defendants acts Plaintiff has obtained evidence that Defendants operating their marketing sites with Seller IDs via Amazon.com use money transfer services with Amazon as a method to receive monies generated through the sale of counterfeit products.  Thus, Amazon also operates as a money transmitter for sales made on the Amazon marketplace. Amazon has the ability to identify, and restrain, the payment accounts associated with the Defendants. through the same Seller IDs via used to conduct their commercial transactions. Additionally, Plaintiff has also obtained evidence that Defendants operating their Seller IDs via eBay.com use money transfer and retention services with PayPal, Inc. as a method for accepting payment for the sale of their counterfeit products. See Declaration of Raymond Chan at paras. 5-9

In light of the inherently deceptive nature of their infringing business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained.

Fed. R. Civ. P. 64 provides "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.  Here in Pennsylvania a -judgment restraint of existing assets is appropriate where a plaintiff is asserts a claim for money damages. *Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death); Also, see *Hoxworth v. Blinder, Robinson & Co*., Inc., 903 F.2d 186 (3d Cir. 1990) (affirming injunction entered restraining assets in class action lawsuit).

This Court has previously granted injunctive relief in actions involving intellectual property rights. For example, in the case of *Gorge Design Grp. LLC v. Syarme,* 2020 U.S. Dist. LEXIS 250848 (WDist Pa 2020) a TRO was granted in a similar case of infringing products being sold by Defendants online storefronts and marketplaces and causing irreparable harm,  The Court (Judge Stickman)  granted the requested TRO and issued an order to show cause why a preliminary injunction should not issue**.** See also *Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Sellers on Amazon.com).

Courts around the country have granted similar relief whether the defendants are located outside of the United States or based in the United States. See for example: *Cartier International A.G. v. Repl* No. 17 cv-62401 (S.D. Fla. Jan. 2, 2018) (mix of U.S. and foreign defendants) and *Juul Labs, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 18-cv-1382 (E.D. Va. Nov. 16, 2018)

Creating and developing a product has been a costly effort that Plaintiff has undertaken. This effort involving graphic and industrial design, fabrication tooling,

marketing and more takes time.   Design, testing and redesign and retest of prototypes are expenses that Plaintiff has experienced but that are avoided by Defendants who merely copy Plaintiff efforts.  Plaintiff's Motion for a temporary restraining order and preliminary injunction are in conjunction with the action against Defendant for design patent infringement are all intended to stop Defendants are using and selling products without authorization at Plaintiffs expense.   See Hong Declaration paras 3-5 and Second Declaration of HongChaung Zhang paras 2-4.

Plaintiff has patented its unique design for a pool brush and has established infringement under the "ordinary observer" test established by the  Federal Circuit. Lanard Toys Ltd. v. Dolgencorp LLC, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (quoting Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc)). "Words cannot easily describe ornamental designs."

By promoting, selling, offering for sale through retail sites online and distributing unauthorized infringing products, Defendant is in violation of Plaintiff's rights and is causing damages that will not be stopped without order of the court.

Defendants operate e-commerce in a manner that allows for buying and selling online through electronic commerce.  Defendants have been contacted to stop the infringement with no result.  Consequently, Plaintiff filed this infringement suit. See Declaration of Raymond Chan paragraph 6.

Plaintiff has continued to suffer irreparable harm and revenue losses of roughly seventy percent loss of sales.  This is detailed by President Hong in his Declaration (and Attachment) and Second Declaration which show the dramatic

number of sales by Defendants in 2022, 2023 and 2024.    Those sales replace Plaintiffs' genuine earnings and limit the ability to recoup expenses.

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff requests an order requiring the cessation of sales in violation of Plaintiff's rights.  Plaintiff is asking for the Court to grant a temporary restraining order and then conduct a proceeding to enter a preliminary injunction to forestall harm that has been occurring due to Defendants' continued infringement.

Defendants' storefronts on the Amazon marketplace and other online sites are allowing Defendants to advertise, offer for sale, and sell infringing products into the United States, including into Pennsylvania.  Plaintiff has been forced to police the Amazon marketplace and other online marketplaces to identify and seek takedowns of unlawful listings that continue to cause damage to Plaintiff's reputation and bottom line. Some Defendants sell their infringing copy of Plaintiff's Product at a fraction of Plaintiff's price which causes an additional problem in online ranking.  Because of the software infrastructure on Amazon and various Internet marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers.  Sometimes Plaintiff's Product is ignored.  Plaintiff has had varied success in contacting Amazon.com identifying and requesting takedowns of the unlawful listings.

For these reasons, Plaintiff retained legal counsel to help with a solution to the damage to Plaintiff's business that will continue unless Plaintiff receives the sought-after restraining order and injunctive relief.  See Declaration of Raymond Chan paras 8-9.

## II.    DEFENDANTS WRONGFUL ACTS

Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's patent any purpose. In President Hong's Declaration and his spreadsheet of Defendants sales, he identifies and particularly points out how Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights. In that spreadsheet, Plaintiff researched the Internet and made tabulations of Defendants illegal sales that are defrauding Plaintiff and the consuming public for Defendants' benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff seeks the help of the Court to restrain and prohibit Defendants' further wrongful infringement. Defendants' copying, reproduction, manufacturing, and distributing of have resulted in infringing products that look indistinguishable to consumers, both at the point of sale and post-sale. This is the same legal measure for design patent infringement of eye of an "ordinary observer."

The infringement is doing double duty. By using Plaintiff's intellectual property, Defendants have created a false association. Thus, they are trading on both the design and reputation of Plaintiff's goods. Their infringement deprives Plaintiff of the value from both compensation from sales and reputation.

Through visual inspection of Defendants' listings for infringing products, it was confirmed that each Defendant is using the Plaintiffs patented design without authorization and that each Defendant is offering for sale, using product features virtually identical to Plaintiff's. See Declaration of Raymond Chan para. 5-6.

The sales of each Defendant that has been tabulated into the aforementioned spreadsheet  which is presented in the Declaration of President Hong has been made through observation of the  checkout pages or order forms for the infringing products to confirm that each Defendant was and/or is still currently offering for sale and/or selling infringing products through seller sites. There each Defendant provides shipping information and has actually shipped Infringing products to the United States, including to customers located in Pennsylvania. At checkout, a shipping address located in the Pittsburgh area in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address. Plaintiff purchased items that were shipped to this area, inspected them and made confirmations. All of the products shipped and received were physically

examined and determined to infringe in a manner that comports with case law established by the Federal Circuit.  See also, *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Plaintiff's Intellectual Property Manager found that the products offered for sale on the Defendant's websites were non-genuine counterfeit products, based on a visual inspection of Defendant's websites).

Ultimately, Defendants' Internet activities infringe upon Plaintiff's intellectual property rights. The Seller IDs, and associated payment accounts, are a substantial part of the means by which Defendants further their scheme to fraudulently and unjustly deprive the Plaintiff of profits and cause reputational harm.  Accordingly, Plaintiff respectfully requests that this Court grant their application  the following: 1) a temporary restraining order; 2) an order freezing financial assets and restraining  assets on Amazon storefronts and other  Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue.

Exhibits 1-9 to the Complaint plus the comprehensive spreadsheet containing identification of seller sites and volume of infringing sales has been present by President Hong as support for this motion.   Should the Court need any additional marketplace information, Plaintiff will endeavor to make that available.

14

III.    ARGUMENT

   A. **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

   Federal courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft, 566* F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F. 2d 434 (3rd Cir. 1987)). See also *D'JAMOOS v. ATLAS AIRCRAFT CTR., INC*. 2009 U.S. Dist. Ct. Motions LEXIS 40167

   Here Defendants infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Pennsylvania's exercise of jurisdiction over Defendants comports with due process.

   To support the finding of jurisdiction the court must determine that the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) The previously cited D'Jamoos cases provide analysis of use of the long-are statutes.

Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322.

   Pennsylvania authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of

this Commonwealth may exercise personal jurisdiction over a person as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit… (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . .(10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is this case, and allow for customers all over the world (including within Allegheny County, Pennsylvania) to view and purchase products, including Infringing Products, as demonstrated by the websites themselves and Plaintiff's purchases of infringing products.

    This Court may exercise personal jurisdiction when, as here, the plaintiff
 can establish that the cause of action at issue arose from the defendant's

activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 414 (1984).  Here, the Defendants intentionally directed their activity towards the Pennsylvania market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws**."**

Thus, Defendants have committed tortious acts that give rise to personal jurisdiction. This is explained in the case of A-*1 Mortg. Corp. v. Day One Mortg*., LLC, 2007 WL 30317 (W.D. Pa. 2007) where similar to our present case the court awarded permanent injunctive where the injury clearly occurred within Pennsylvania, and as Defendants' listings, resulted in consumers throughout the U.S., and specifically in Pennsylvania, purchasing infringing products. Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania.

Plaintiff has viewed Defendant's infringing products via their online Amazon.com and purchased them and physically received them and examined them and observed that Defendants paid Pennsylvania sales tax for the privilege of intentionally shipping the products into this district.

Even stronger is the precedent in this District that Defendants simply making offerings for sale is sufficient to give personal jurisdiction over the alleged

infringer within the state.   *Zippo Manufacturing Co. v. Zippo Dot Com, Inc*.,
952 F. Supp. 1119 (W.D. Pa. 1997). In Zippo this Court considered the
Constitutionally permissible reach of Pennsylvania's Long Arm Statute, 42
Pa.C.S.A. § 5322, "through cyberspace" and stated that " when an entity
intentionally reaches beyond its boundaries to conduct business with foreign
residents, the exercise of specific jurisdiction is proper.[1]

 "Different results should not be reached simply because business is conducted
over the Internet". This constitutional touchstone is met by the Defendants
offering for sale and/or selling of Infringing Products through their
Amazon.com and   unequivocally establishes that Defendants conduct business
within this District and the claims in this suit arise from Defendants' business
dealings and transactions with consumers in Pennsylvania.

---

[1] At notes 4 and 5, the Zippo Court added additional background on the exercise
of personal jurisdiction:" The Constitutional limitations on the exercise of
personal jurisdiction differ depending upon whether a court seeks to exercise
general or specific jurisdiction over a non-resident defendant. General
jurisdiction permits a court to exercise personal jurisdiction over a non-resident
defendant for non-forum related activities when the defendant has engaged in
"systematic and continuous" activities in the forum state. *Helicopteros
Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984). In the absence of
general jurisdiction, specific jurisdiction permits a court to exercise personal
jurisdiction over a non-resident defendant for forum-related activities where the
"relationship between the defendant and the forum falls within the 'minimum
contacts' framework" of International Shoe.

The assertion of personal jurisdiction over Defendants comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such that maintenance of this suit does not offend 'traditional notions of fair play.

Thus, the Plaintiff has made out a prima facie case that Defendants' contacts with the Pennsylvania meet the "minimum contacts" test. Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the U.S. and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the U.S." 42 Pa. C. S. A. § 5322(b) (1981).[2]

In our present case of infringing pool brushes, each of the Defendants has used an interactive web site for offering for sale and selling infringing products.

---

[2] Because Pennsylvania's long-arm statute is coextensive with the dictates of the U.S. Constitution, the traditional two-step analysis is collapsed into a single inquiry: "whether the exercise of personal jurisdiction would conform with the Due Process Clause." Poole v. Sasson, 122 F. Supp. 2d 556, 558 (E. D. Pa. 2000).  Due process requires that the defendant have "minimum contacts" with the forum state. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945)). The Supreme Court states that "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws defendant purposefully established'' contacts with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, (1985)

This Court has personal jurisdiction over each Defendant based upon internet-based sales activity into the US and this judicial district.

The seminal opinion in this regard is *Zippo* which established a "sliding scale" analytical framework for internet-based personal jurisdiction cases based upon the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." 952 F. Supp. at 1124. The court explained: [T]the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by

examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

The Third Circuit endorsed this general framework in Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of "the intentional nature of the defendant's conduct vis-a-vis the forum state." Id. at 452. In other words, "there must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." Id. at 454. See also Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 556 (3d Cir. 1993) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

 Since Zippo and Toys "R" Us, most courts have concluded that a defendant that intentionally conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum.

In Square D, for example, the defendant's website contained links providing "a [telephone] number and e-mail address for the purpose of placing an order," information concerning product warranties, and a link that permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number, and

quantity of the product to be purchased, as well as the purchaser's company name, phone, fax and e-mail." Square D Co. v. Scott Elec. Co., No. 06-459, 2008 WL 4462298 (W.D. Pa. Sept. 30, 2008). Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "providing much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." The court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania. As explained by the court: The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation to a customer in Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum.

*Willyoung v. Colorado Custom Hardware, Inc*. is similarly instructive. In *Willyoung,* the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the

company directly by e-mail, subscribe to on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.'" Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales. Id. Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website."[3]

The findings are clear in our present case.  Defendants in this case have all offered interactive web sites for viewing, ordering, and paying for the infringing products and have purposefully availed themselves of the opportunity to

---

[3] Other courts have frequently reached the same conclusion such as S *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's interactive website was used by Pennsylvania residents to place at least 17 orders over a three year period); TRE Services, Inc. v. U .S. Bellows, Inc., 2012 WL 2872830, *4–5 (W.D. Pa. July 12, 2012) (finding personal jurisdiction based on defendant's commercially interactive website  that accepted orders from Pennsylvania); Gourmet Video, Inc. v. Alpha Blue Archives, Inc., 2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state."); *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 588, 593–94 (D. Del. 2008) (defendants purposely availed themselves of doing business in state of Delaware where they operated a website accessible in Delaware, received orders and payments from customers in Delaware, and shipped their products to Delaware).

conduct business with Pennsylvania citizens.  Further there is sufficient

evidence to establish the type of "intentional interaction with the forum state"

required by the Third Circuit for the exercise of personal jurisdiction. See Toys

"R" Us, 318 F.3d at 451–52 (requiring evidence that the defendant has

"intentionally interact[ed] with the forum state. As noted in Zippo, "[t]he

Supreme Court has made clear that even a single contact can be sufficient."

Zippo, 952 F. Supp. at 1127

    Since the Defendants have purposefully availed themselves of the

opportunity to conduct business with Pennsylvania citizens through their

interactive websites, including collecting and paying Pennsylvania sales tax, the

Court must next consider whether this litigation "arise[s] out of and relate[s] to"

those sales.

    Here, the lawsuit directly arises out of the Defendants' respective sales of

infringing products into Pennsylvania residents through their interactive

websites. See Square D. at 11 (finding the relatedness requirement satisfied

where "at least one" of the products sold to a Pennsylvania resident by the

defendant was from the allegedly infringing line of products at issue in the

litigation). All of the Infringing Products which are the subject of this lawsuit

were sold into Pennsylvania. Therefore, the "arise[s] out of and relate[s] to" test

is easily met here.

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." O'Connor v Sandy Lane Hotel Co., Ltd, 496 F.3d 312, 316 (3rd Cir. 2007) (quoting Int'l Shoe, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King, 471 U.S. at 477).

As the Third Circuit has observed: The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief. O'Connor, 496 F.3d at 324.

The burden on the defendant at this stage of the inquiry is considerable. See Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases").

Moreover, here the Plaintiff's interest in obtaining convenient and effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods within its borders are factors that

25

weigh heavily in finding personal jurisdiction of the Defendants. See Zippo, 952 F.Supp. at 1127, ("[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its [products] to Pennsylvania residents." Zippo at 1126–27. Accordingly,

Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

## PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Defendants fraudulently promote, advertise, sell, and offer for sale goods infringing Plaintiff's patent, via their fully interactive, commercial Internet e-commerce stores using the Seller IDs. Specifically, Defendants wrongfully use infringements of Plaintiff's proprietary rights to increase traffic to their illegal operations. By their actions, Defendants are passing off Defendants' infringing products as Plaintiff's genuine products and creating a false association in the minds of consumers between Defendants and Plaintiff. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Plaintiff's intellectual property at issue and preserve the

status quo until such time as a hearing can be held.,. As Defendants engage in illegal infringing activities, Plaintiff has no reason to believe Defendants will make their assets available for recovery pursuant to an account of profits or will adhere to the authority of this Court any more than they have adhered to the patent law.

This Court should prevent injustice from occurring by issuing a temporary restraining order which precludes Defendants from continuing to display their infringing products.  Only such an order will prevent ongoing irreparable harm and maintain the status quo. Many courts have granted a temporary restraining order in situations where the harm to plaintiffs far outweighed the harm to defendants.

The Third Circuit holds that a district court must evaluate the following four factors in deciding whether preliminary injunctive relief is appropriately entered: (1) the extent to which the moving party will suffer irreparable harm without injunctive relief; (2) the likelihood that the moving party will succeed on the merits; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *AT&T Co. v. Winback and Conserve Program, Inc*., 42 F.3d 1421, 1427 (3d Cir. 1994).

As shown below, Plaintiff readily meets the criteria for obtaining a temporary restraining order and preliminary injunction.  The "standards which govern consideration of an application for a temporary restraining order are the same standards as those which govern a preliminary injunction." Local 1814, Int'l

Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiff has met the standard for a preliminary injunction, and accordingly, a temporary restraining order should also be issued against Defendants.

**1. Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction Leaving It with No Adequate Remedy at Law Defendants' infringing activities must be stopped immediately in order to prevent any further harm to Plaintiff.**

Plaintiff stands to suffer irreparable harm and lost profits as a result of Defendants' competing substandard infringing products, but also it deprives Plaintiff of its exclusive rights.  see Declaration of President Hong and Declaration of Raymond Chan. In President Hong's Declaration, he discusses a 70% loss of revenue since 2020, which he believes to be largely from sales of infringing products by Defendants.  He has provided a spreadsheet showing the large amount of pool brush sales by Defendants, with figures taken directly from the sales reports obtained from online sites.

Raymond Chan has provided two Declarations that confirm Plaintiff's downward trends of revenue and provides a screen shot of Plaintiffs verified financial reports and a dramatic loss of revenue over the years 2022-24 from sales in the United States.

2022

The first of the screenshots show a high level of revenue from the company's two products from 2022 for two pool brush products named Poolvio.  For 2020 sales volume from that year was 11821 pieces ordered of Product 1 and 2499 units of the second product

The Revenue from these two products, as shown, was 430899.76 for Product 1 and 64890.10 for product 2.

The report shows that sales fell in 2023.  The volume of product for Poolvio 1 fell to     10456 For Product No 2 it fell to 3994.  The Revenue from Product 1 fell to 315725.32 and Product 2 was 121759.98.


For 2024 the decline continues.  Attached to this declaration is a set of screen shots with financial reports of Ningbo Bonny eHome for the years 2022-2024. What is shown is sales and revenue from orders from the United States.


2022: The first of the screenshots shows a high level of revenue from the company's two products from 2022 for two pool brush products named Poolvio.  For 2020 sales volume from that year was 11821 pieces ordered of Product 1 and 2499 units of the second product

The Revenue from these two products, as shown, was 430899.76 for Product 1 and 64890.10 for product 2.

2023: The report shows that sales fell in 2023.  The volume of product for Poolvio 1 fell to10456; For Product No 2 it fell to 3994.  The Revenue from Product 1 fell to 315725.32 and Product 2 was 121759.98.

- 2024: The report indicates that sales decreased in 2024.  The volume of products for Poolvio 1 fell to 4462; For Product No 2 it fell to 2529.  The Revenue from Product 1 fell to 100256.20 dollars; and Product 2 decreased to 55547.6 dollars.

In sum, there is a dramatic negative trend that is a least 70% of sales measured by sales volume and by revenue decline.  This decline may continue and make it difficult for the company to cover its cost of business.  Plaintiff asserts that the decline is due to the Defendants' copied products.

## 2. **Plaintiff is Likely to Prevail on The Merits of Its Patent Infringement Claim**

Plaintiff asserts a cause of action under Patent Law and has established a likelihood of success on this cause of action.

To prove design patent infringement requires demonstration of two elements: (1) ownership of a patent and (2) unauthorized infringement of Plaintiff's exclusive rights.  The measure of infringement of a design patent is through the eye of the *See Homy Casa Ltd. v. Jili Creation Tech. Co., Ltd. Pennsylvania Western Di*strict Court November 5, 202024,024 U.S. Dist. LEXIS 200757.  To show infringement through the eye of the beholder, Plaintiff has provided a prima facie case in the Complaint and attached Exhibits.  These Exhibits show the ownership of a patent and the infringing products that are exactly similar to the patented design which demonstrates a high likelihood of success as the infringing products are a mirror image of Plaintiff's design.  There is barely room for any debate that they are the same exact design as Plaintiff has registered as a design patent.

Accordingly, the likelihood that Plaintiff will succeed on the merits of the case is very high since the elements of an infringement case, ownership and unauthorized use are both present in this case.

### 3. The Balance of Hardships Favors Plaintiff

The balance of hardships unquestionably and overwhelmingly favors Plaintiff in this case. Here, as described above, Plaintiff has suffered and will continue to suffer irreparable harm to its business, the value, goodwill and

reputation built up in and associated with the Plaintiff's products.  In contrast, any harm to Defendants would only be the loss of Defendants' ability to continue to offer their infringing Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent defendants choose to build a business on products found to infringe [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Intern, Inc. v. AMF, Inc*., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Broad. Music, Inc. v. Prana Hosp., Inc.,* 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) Defendants' continuing infringing activities are causing irreparable harm to the Plaintiff's reputation and depriving Plaintiff of its exclusive rights.

### 4.  The Relief Sought Serves the Public Interest

Defendants are directly defrauding the consuming public with the infringing products as Plaintiff's genuine goods. The "public has an interest in not being deceived.

### B. PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND FREEZING OF

## DEFENDANTS' MERCHANT STOREFRONTS FINANCIAL ASSETS

### 1. Defendants' Assets Must be Frozen.

In addition, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that they will likely succeed on the merits of their claims. As such, under 17 U.S.C. § 504(b), Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their unlawful scheme. Furthermore, it is unlikely that Defendants possess the funds to satisfy any potential judgment and Pennsylvania law also permits the prejudgment restraint sought by Plaintiff. Due to the deceptive nature of Defendants' business, and Defendants' deliberate violations of patent law, Plaintiff respectfully requests this Court grant additional relief restraining the transfer of all monies held or received by PayPal, Amazon, or other financial institutions for the benefit of any one or more of the Defendants. See *Hoxworth v. Blinder, Robinson & Co., Inc*., 903 F.2d 186 (3d Cir. 1990) (district court has power to issue an injunction in order to protect a future damage remedy).

This Court has broad authority to grant such an order.

The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets

in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999). The Third Circuit has additionally ruled that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in order to protect a future damages remedy. Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (1990). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to restrain assets *pende lite*. For example, *Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all of the Circuit Courts have held that Rule 65 is available to freeze assets *pendent lite* under some set of circumstances"). [4]

Defendants, who are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or

---

[4] Many federal courts have granted the temporary restraint of an infringer's assets in cases similar to this one, including actions against operators of 'rogue' websites selling infringing products to ensure the availability of an equitable accounting. See, *Tory Burch LLC v. Yong Sheng Intl Trade* Co., Ltd., No. 10-Civ-9336 (S.D.N.Y. December 17, 2010). District courts have the "authority to freeze those assets which could [be] used to satisfy an equitable award of profits.*" North Face Apparel Corp. v. TC Fashions, Inc.*, (S.D.N.Y. Mar. 30, 2006). Furthermore, in the Third Circuit, the inability of a defendant to satisfy a judgment for legal damages justifies a pre-judgment restraint of existing assets. Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (3d Cir. 1990)

selling infringing products to U.S. consumers solely via the Internet, and accepting payment for such in U.S. Dollars and causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen.

## 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen.

A temporary restraining order which restrains and enjoins  any and all as yet undiscovered online marketplace platforms, from providing services to Defendants' is warranted and necessary because the continued offering for sale and/or sale of the Infringing Products by Defendants will result in immediate and irreparable injury to Plaintiff. A freezing of Defendants' Merchant Storefronts also acts to provide immediate notice of the present action to Defendants.

## C. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

This Court has broad discretion in determining the adequacy of a security bond. *C.J. Hughes Constr. Co. Inc. v. Eqm Gathering Opco, LLC*

Pennsylvania Western District Court, January 11, 2023, 2023 U.S. Dist. LEXIS 243189.

A bond is a condition of preliminary injunctive relief. Fed. R. Civ. P. 65(c) and requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Thus, the injunction bond "provides a fund to use to compensate incorrectly enjoined defendants." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 804 (3d Cir. 1989). The injunction bond also serves other functions. "It is generally settled that, with rare exceptions that a wrongfully enjoined has recourse only against the bond." See also Hoxworth v. Blinder, Robinson & Co., Inc., (Applicants "derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully issued preliminary injunctions can recover only against the bond itself."). Thus, the bond generally limits the liability of the applicant and informs the applicant of "the price [it] can expect to pay if the injunction wrongfully issues." Instant Air Freight, 882 F.2d at 805; see also id. at 805 n. 9 ("The bond can thus be seen as a contract in which the court and [the applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.").

Plaintiff respectfully submits that the amount of $5000.00 is appropriate in connection with the nature of the financial volumes in this case and with Plaintiff's dire financial straits. See Declaration of Raymond Chan.

VI CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and freezing financial assets; 3) an order to show cause why a preliminary injunction should not issue and such other relief to which Plaintiff may show it is legally entitled.  A proposed Order has been provided.

Dated: June 6, 2025                    RAYCHAN I.P. LAW FIRM, PLLC

/s/ Patricia Ray
_____